## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

JESUS and LETICIA NEVAREZ,                )
on behalf of themselves and              )
all others similarly situated,           )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 )  No. 02 C 3568
                                         )
O'CONNOR CHEVROLET, INC.                 )          Magistrate Judge Soat Brown
and EVERGREEN FINANCE COMPANY,           )
                                         )          CLASS ACTION
            Defendants.                  )

FILED

AUG 2 3 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
AUG 2 4 2004

### PLAINTIFFS' RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT

1.      Jesus and Leticia Nevarez are individuals residing in Chicago, Illinois. (Exhibit "A", ¶ 2).

**RESPONSE:** Admit.

2.      O'Connor Chevrolet is an Illinois corporation doing business in the northern district of Illinois at 12680 South Kedzie Avenue, Alsip, Illinois 60658. (Exhibit "A", ¶ 3);

**RESPONSE:** Admit.

3.      Evergreen Finance Company is an Illinois corporation doing business in the northern district of Illinois. (Exhibit "A", ¶ 4);

**RESPONSE:** Admit.

4.      Plaintiffs claim that federal jurisdiction arises under their claim in Count II for an alleged violation of the Equal Credit Opportunity Act. Plaintiffs claim that this court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. (Exhibit "A", ¶ 5);

1

**RESPONSE:** Plaintiffs admit that federal jurisdiction arose due to Defendants' violation of the Equal Credit Opportunity Act and that supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs further admit that this Court may still exercise pendent jurisdiction over the state law claims even if the ECOA claim is dismissed in the interest of time, judicial economy, and fairness.

5.     Venue is proper in this district as the acts giving rise to this alleged cause of action occurred here. (Exhibit "A", ¶ 6);

**REPONSE:** Admit.

6.     In early May 2001, Leticia Nevarez went to O'Connor Chevrolet to look to purchase an automobile. (Exhibit "B", pp. 34-35);

**RESPONSE:** Admit that in early May 2001, Leticia and Jesus Nevarez went to O'Connor to purchase an automobile after Juan Soto, an O'Connor representative, told Leticia over the phone that she was approved for a $20,000.00 to $25,000.00 car loan if she made a $3000.00 to $5000.00 down payment. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, pp. 36-38).

7.     On that visit in early May 2001, Leticia Nevarez and Jesus Nevarez decided that they wanted to purchase a Mercury Mountaineer. (Exhibit "B", p. 53; Exhibit "C");

**RESPONSE:** Admit that on May 5, 2001, Plaintiffs went to the dealership and wanted to purchase a Tahoe. However, after Juan Soto told Plaintiffs they could not be financed for the Tahoe, Juan Soto steered Plaintiffs toward purchasing the Mercury Mountaineer, which they eventually decided to purchase. But, after reviewing Leticia's credit for the second time, Juan Soto told her that she did not qualify to purchase the Mountaineer. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, pp. 42-56).

2

8.      On May 5, 2001, Jesus Nevarez signed a Retail Installment Contract for the purchase of a 1999 Mercury Mountaineer. (Exhibit "C");

**RESPONSE:** Admit. (*See* Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 Retail Installment Contract).

9.      In conjunction with the Nevarezes' attempt to purchase the 1999 Mercury Mountaineer, representatives of O'Connor Chevrolet submitted applications for credit to Nuvell, AmeriCredit, Onyx Acceptance, Household Automotive Finance, and Evergreen Finance Company. (Exhibit "D");

**RESPONSE:** Admit.

10.     On May 7, 2001, Nuvell declined to extend credit. (Exhibit "E").

**RESPONSE:** Admit that Nuvell notified O'Connor that it declined to extend Plaintiff Jesus Nevarez credit for the May 5, 2001 contract. (*See* Exhibit "E" to Defendants' L.R. 56.1 Statement, Nuvell's May 7, 2001 Declination Notice).

11.     On May 7, 2001, AmeriCredit declined to extend credit. (Exhibit "F").

**RESPONSE:** Admit that AmeriCredit notified O'Connor that it declined to extend Plaintiff Jesus Nevarez credit for the May 5, 2001 contract. (*See* Exhibit "F" to Defendants' L.R. 56.1 Statement, AmeriCredit's May 7, 2001 Declination Notice).

12.     On May 7, 2001, Onyx Acceptance Corporation declined to extend credit (Exhibit "G").

**RESPONSE:** Admit that Onyx Acceptance Corporation notified O'Connor that it declined to extend Plaintiff Jesus Nevarez credit for the May 5, 2001 contract. (*See* Exhibit "G" to Defendants' L.R. 56.1 Statement, Onyx Acceptance Corporation's May 7, 2001 Declination Notice).

13.     On May 7, 2001, Household Automotive Finance conditionally approved the extension of credit (Exhibit "H").

**RESPONSE:** Plaintiffs' admit that Household Automotive Finance conditionally approved the extension of credit to Jesus Nevarez for the May 5, 2001 contract. Plaintiffs further admit that this offer would have been approved by Household and that the Nevarezes had until June 5, 2001 to accept Household Finance's offer. (*See* Exhibit "N" to Defendants' L.R. 56.1 Statement, Deposition of Roseann Cunningham, p. 37 (stating that Jesus Nevarez had until June 5, 2001 to accept Household's financing offer); pg. 46 (discussion why loan would have likely been approved)).

14.     On May 14, 2001, Evergreen Finance Company agreed to provide credit to the Nevarezes for the purchase of the 1999 Mercury Mountaineer. (Exhibit "I").

**RESPONSE:** Admit that after O'Connor terminated its May 5, 2001 contract with Jesus Nevarez, Evergreen Finance Company agreed to provide credit to both Jesus and Leticia Nevarez on a different contract. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 80-88; Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 Retail Installment Contract; Exhibit "J" to Defendants' L.R. 56.1 Statement, May 19, 2001 Retail Installment Contract.)

15.     On May 19, 2001, the Nevarezes signed a Retail Installment Contract for the purchase of the 1999 Mercury Mountaineer with Evergreen Finance as the "assignee" of the contract. (Exhibit "J");

**RESPONSE:** Admit.

16.     Nuvell's decline notice to O'Connor Chevrolet indicates the commencement of an automated process by which an applicant, in this case Jesus Nevarez, is notified by Nuvell of an adverse action. (Exhibit "K", ¶3);

RESPONSE: Plaintiffs have filed a motion to strike requesting that Statement No. 16 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

17.     Under Nuvell's automated system, after the declination is transmitted by facsimile to the dealer, the automated system generates a notice of adverse action letter which is mailed directly to the applicant. (Exhibit "K", ¶4);

RESPONSE: Plaintiffs have filed a motion to strike requesting that Statement No. 17 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

18.     Nuvell's notice of adverse action letter is sent directly to the applicant's address via first-class mail by an automated process. (Exhibit "K"; ¶7);

RESPONSE: Plaintiffs have filed a motion to strike requesting that Statement No. 18 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

19.     There is no indication that Nuvell's automated system failed in any manner during May or June of 2001. (Exhibit "K", ¶7);

RESPONSE: Plaintiffs have filed a motion to strike requesting that Statement No. 19 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

20.     The evidence at Nuvell does not indicate any instance during May or June 2001 in which notification of a customer's declination was sent directly to a dealer by facsimile, and Nuvell's computer-generated notification of adverse action letter was not prepared for, and mailed to, the customer directly.  (Exhibit "K", ¶8);

**RESPONSE:**  Plaintiffs have filed a motion to strike requesting that Statement No. 20 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

21.     The evidence at Nuvell indicates that Nuvell's standard operating procedures were followed for the Jesus Nevarez application, and there is no evidence that a letter sent by Nuvell to Jesus Nevarez was returned as undeliverable.  (Exhibit "K", ¶9);

**RESPONSE:**  Plaintiffs have filed a motion to strike requesting that Statement No. 21 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

22.     Nuvell no longer has a copy of the adverse action letter sent to Jesus Nevarez in its files.  (Exhibit "K", ¶¶10-11);

**RESPONSE:**  Plaintiffs have filed a motion to strike requesting that Statement No. 22 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

23.     The declination transmittals sent by AmeriCredit to O'Connor Chevrolet are part of an automated process by which applicants are notified by AmeriCredit of an adverse action. (Exhibit "L", ¶4);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 23 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

24.     AmeriCredit's computer systems have been programmed to create a file of applicants who are to receive adverse action letters.  Adverse action notices are then printed for these applicants by Check Printers.  (Exhibit "L", ¶5);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 24 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

25.     AmeriCredit's computer generated adverse action letters are mechanically addressed and mailed directly to the applicants via first-class mail.  (Exhibit "L", ¶¶5-6);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 25 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

26.     There is no evidence of a malfunction in this automated system used by AmeriCredit during May or June 2001.  (Exhibit "L", ¶7);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 26 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

27.     AmeriCredit has no evidence during May or June 2001 in which a decline notice was sent to a dealer and the system-generated adverse action letter was not prepared for, and mailed to, the customer directly.  (Exhibit "L", ¶8);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 27 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

28.     The evidence at AmeriCredit indicates that the standard operating procedures were followed for the Jesus and Leticia Nevarez applications, nor is there any evidence that any letter sent to the Nevarezes was returned as undelivered. (Exhibit "L", ¶9);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 28 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

29.     AmeriCredit no longer has a copy of the adverse action notice sent to the Nevarezes in its files. (Exhibit "L", ¶¶ 10-11);

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 29 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

30.     On February 18, 2004, a subpoena was issued to Onyx Acceptance Corporation asking for "[c]opies of any and all declination of credit letters sent to Jesus Nevarez in relation to Onyx application ID 6212148, declined May 7, 2001" (Exhibit "M");

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 30 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

31.     On May 20, 2001, Onyx Acceptance Corporation sent an adverse action notice to Jesus Nevarez in relation to his application for credit. (Exhibit "M");

**RESPONSE:** Plaintiffs have filed a motion to strike requesting that Statement No. 31 of Defendants' Local Rule 56.1 Statement of Material Facts be stricken due to immateriality and irrelevancy.

32. Household Automotive Finance conditionally approved the Nevarezes' application for credit. (Exhibit "N", pp. 63-64).

**RESPONSE:** Admit.

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

1.     Defendants have withdrawn Section III of their Memorandum in Support of the Motion for Summary Judgment. *See* Exhibit 1, attached hereto.

2.     Plaintiff Jesus Nevarez was an applicant for credit on the purchase of a 1999 Mercury Mountaineer. (*See* Exhibit 2, attached hereto, Jesus Nevarez credit application).

3.     The Nevarezes called O'Connor Chevrolet in response to a Spanish advertisement Leticia Nevarez had seen. The advertisement said that O'Connor spoke Spanish and financed everyone, no matter what kind of credit. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 53).

4.     O'Connor advertised to the public that: "Recuerde, Nosotros Financiamos A Todos" – "Remember, we finance everyone." (*See* Exhibit 3, attached hereto).

5.     O'Connor advertised to the public that: "Nosotros le revisamos su creditor GRATIS" – "We review your credit for free." (*See* Exhibit 3, attached hereto).

6.     O'Connor advertised to the public that: "Not able to be financed at another place? Here you can!" (*See* Exhibit 3, attached hereto).

7.     As a result of Leticia Nevarez's inquiry on April 10, 2001, O'Connor pulled and reviewed Leticia Nevarez's credit report. (*See* Exhibit 4, attached hereto, Portions of redacted credit report of Leticia Nevarez; Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 37.)

8.     Juan Soto of O'Connor Chevrolet told Leticia that she was approved for financing of a car for $20,000 to $25,000 if she made a down payment of $3000 to $5000. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, pps. 36-38).

9.      After Leticia Nevarez visited the dealership, O'Connor evaluated her credit again and orally stated to Leticia that it could not finance her. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez at pp. 52-57; Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 retail installment contract, indicating Jesus Nevarez as the sole purchaser).

10.     O'Connor did not submit Leticia Nevarez's credit application to third party lenders prior to refusing to extend her credit on May 5, 2001. (*See* Exhibit 4, attached hereto, Portions of redacted credit report of Leticia Nevarez).

11.     O'Connor did not send Leticia Nevarez an adverse action notice for its denial of financing to her on May 5, 2001. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez at pp. 55-57).

12.     On May 4, 2001, O'Connor Chevrolet examined Jesus Nevarez's credit report in connection with the 1999 Mercury Mountaineer transaction. (*See* Exhibit 5, attached hereto, Deposition of Sean Galvin, p. 100, ln. 1-22; Exhibit 6, attached hereto, Portions of credit report of Jesus Nevarez; Exhibit "E" to Defendants' L.R. 56.1 Statement, May 5, 2001 Retail Installment Contract).

13.     On May 5, 2001, after reviewing Jesus Nevarez's credit report, O'Connor entered into a retail installment contract with Jesus Nevarez. (*See* Exhibit 5, attached hereto, Deposition of Sean Galvin, p. 100, ln. 1-22; Exhibit 6, attached hereto, Portions of credit report of Jesus Nevarez; Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 Retail Installment Contract).

14.     After executing the May 5, 2001 retail installment contract with Jesus Nevarez, O'Connor permitted him to leave the dealership in possession of the 1999 Mountaineer. (*See*

Exhibit 7, attached hereto, Delivery rider; Exhibit "A" to Defendants' L.R. 56.1 Statement, ¶ 17;

Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 Retail Installment Contract).

15.    After accessing consumers' credit reports and entering into retail installment

contracts with those consumers, O'Connor Chevrolet regularly submits its customers' credit

applications to financing institutions, and submitted Jesus Nevarez's credit application to various

lenders. (*See* Exhibit 5, attached hereto, Deposition of Sean Galvin, p. 64, ln. 10-25, 100;

Exhibit 8, attached hereto, Deposition of Karen Zimmerman, p. 25, ln. 6-11; Exhibit 9, "fax-

back" forms; *see* Exhibit 10, attached hereto, O'Connor's Response to Plaintiffs' First Set of

Written Discovery Requests, at Interrogatory No. 8).

16.    O'Connor regularly tries to put financing together for its customers, and tried to

put together financing for Jesus and Leticia Nevarez. (*See* Exhibit 5, attached hereto, Deposition

of Sean Galvin, p. 64, ln. 10-25; Exhibit 8, attached hereto, Deposition of Karen Zimmerman, p.

25, ln. 6-11); Exhibit 11, attached hereto, Deposition of Sylvia Borchert, p. 29, "the APR on the

contract is . . . what the dealership puts on the contract. We [the financing company] have

nothing to do with what rate the dealer puts on a contract for the APR.")

17.    Household Finance conditionally approved the financing of the May 5, 2001

contract. (*See* Exhibit "H" to Defendants' L.R. 56.1 Statement, Household Finance's

Conditional Approval, sent to O'Connor).

18.    Despite finding a financing company that would finance the May 5, 2001

contract, O'Connor terminated the contract. (*See* Exhibit "B" to Defendants' L.R. 56.1

Statement, Deposition of Leticia Nevarez, pps. 80-81 (O'Connor called Leticia Nevarez and told

her that unless Jesus Nevarez got a co-signor for the contract, it would take the car away), p. 136

(the Nevarezes were told the May 5, 2001 contract was rejected because they did not earn

enough); Exhibit "H" to Defendants' L.R. 56.1 Statement, Household Finance's Conditional

Approval, sent to O'Connor; Exhibit "N" to Defendants' L.R. 56.1 Statement, Deposition of

Roseann Cunningham, p. 37 (stating that Jesus Nevarez had until June 5, 2001 to accept

Household's financing offer); pg. 46 (discussion why loan would have likely been approved)).

19.    O'Connor Chevrolet did not provide Jesus Nevarez with a written statement of

reasons as to why his May 5, 2001 contract with O'Connor was terminated. (*See* Exhibit "A" to

Defendants' L.R. 56.1 Statement, Plaintiffs' Second Amended Complaint ¶ 59; Exhibit "B" to

Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 136).

20.    After O'Connor terminated Jesus Nevarez's May 5, 2001 contract, O'Connor

entered into a new contract with both Leticia and Jesus Nevarez, which it subsequently assigned

to Evergreen Finance. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Dep. of Leticia

Nevarez, at pp. 88, 135-36 (telephone call from Juan Soto of O'Connor telling Leticia Nevarez

that Jesus Nevarez did not make enough money for the contract to be approved); Exhibit "H" to

Defendants' L.R. 56.1 Statement, Household Finance's Conditional Approval of May 5, 2001

Contract; Exhibit "N" to Defendants' L.R. 56.1 Statement, Deposition of Roseann Cunningham

(stating that loan would have been approved, p. 46, and that Jesus Nevarez had until June 5, 2001

to accept Household's offer, p. 37); Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5,

2001 Retail Installment Contract; Exhibit "J" to Defendants' L.R. 56.1 Statement, May 19, 2001

Retail Installment Contract).

21.    There is no evidence that O'Connor ever told Plaintiffs that the May 5, 2001

contract was conditionally approved by Household or that they had until June 5, 2001 to accept

Household's offer. In fact, Juan Soto only told Plaintiffs that their financing was rejected

because they "did not earn enough and that because [they] needed another signature." (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 135-36).

22.     The May 19, 2001 was a new contract that was on different terms than the May 5, 2001 contract. (*See* Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 retail installment contract; Exhibit "J" to Defendants' L.R. 56.1 Statement, May 19, 2001 retail installment contract).

23.     The May 19, 2001 retail installment contract had different terms and different parties than the May 5, 2001 retail installment contract. (*See* Exhibit "C" to Defendants' L.R. 56.1 Statement, May 5, 2001 retail installment contract; Exhibit "J" to Defendants' L.R. 56.1 Statement, May 19, 2001 retail installment contract).

24.     If the May 5, 2001 retail installment contract reflected: 1) monthly payments of $500.00, 2) a calendar of payments of 60 months or less, 3) a down payment of $5,000.00, and 4) mileage of less than 50,000 miles on the Mountaineer, Household would have purchased the deal. (*See* Exhibit "N" to Defendants' L.R. 56.1 Statement, Deposition of Roseann Cunningham, p. 54).

25.     O'Connor did not inform the Nevarezes that Household would have approved them for financing on the May 5, 2001 contract. (*See* Exhibit "B" to Defendants' L.R. 56.1 Statement, Deposition of Leticia Nevarez, p. 80, 136; Exhibit "N" to Defendants' L.R. 56.1 Statement, Deposition of Roseann Cunningham, p. 54).

26.     O'Connor never provides consumers whose contracts are terminated after having been signed with a written notice specifying the reasons for such termination (*See* Exhibit 8, attached hereto, Deposition of Karen Zimmerman, pps. 45-49).

Respectfully Submitted,

By: _____
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808

Dmitry N. Feofanov
ChicagoLemonLaw.com
1639 Brandywine Lane
Dixon, Illinois 61021
(815) 288-3217

# See Case File for Exhibits